UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

MILVIO DUARTE,

       Movant-Defendant.

No. 1:99 Cr. 192 (CSH)

**MAY 28, 2024**

---

### RULING ON DEFENDANT'S MOTION TO VACATE CONVICTION AND JUDGMENT UNDER 28 U.S.C. § 2255

**HAIGHT, Senior District Judge:**

Defendant Milvio Duarte, currently incarcerated in a federal prison following his conviction by a jury on criminal charges in this Court, now moves for habeas corpus relief pursuant to 28 U.S.C. § 2255.[1]

Specifically, Duarte moves to vacate his conviction on Count Five of the indictment, for violating the firearms statute, 18 U.S.C. § 924(c). Doc. 61. Duarte also seeks a resentencing on the remaining counts of conviction. The government opposes the motion in its entirety. This Ruling decides Duarte's motion.

---

[1] Upon the entry date of this Ruling, Duarte is incarcerated at USP Pollock, a high security U.S. penitentiary in Pollock, Louisiana.

## I. BACKGROUND

Defendant Milvio Duarte was charged with several federal offenses in connection with the contract killing in April 1994 of one Nelson Almonte.

According to the government's proof at trial, Duarte was at that time the leader of a New York City gang engaged in narcotics trafficking. Almonte was acting as an informant for the federal Drug Enforcement Administration. A time came when Duarte was arrested on drug charges as the result of information furnished to law enforcement by Almonte.

After Duarte was released on bail on the drug charges against him, he arranged for the murder of Almonte by other members of the drug-selling gang. Specifically, Duarte offered one of his drug distributors, one Erbo, an amount of cocaine to kill Almonte and thereby prevent Almonte from testifying against Duarte at trial. *See* Pre-sentence Report ("PSR") ¶ 11. On April 22, 1994, Duarte spotted Almonte on a street in Manhattan. Duarte summoned Erbo to the area. Erbo, in turn, paged another individual, one Mungin. Erbo and Mungin together trailed Almonte to 133rd Street and Broadway, pulled up alongside his car, and fired eleven rounds at Almonte, killing him. Duarte was not present at this shooting. The firearms used by the others to kill Almonte did not belong to Duarte, and he never handled them. These facts are not disputed. They are recited in the briefs on the motion.

Duarte was indicted for the murder of Almonte, in a five-count indictment which charged as follows:

Count One:  conspiracy to commit murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5);

Count Two:  murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1) and 2;

>   Count Three: tampering with a witness by murder in order to prevent testimony and prevent communications with law enforcement, in violation of 18 U.S.C. §§ 1512(a)(1)(A), 1512(a)(1)(C) and 2;
>
>   Count Four: tampering with a witness by murder in retaliation for providing information to law enforcement relating to the commission of a federal offense, in violation of 18 U.S.C. § 1513(a)(1)(B) and 2;
>
>   Count Five: using and carrying a firearm in relation to a crime of violence, "to wit, the conspiracy to murder and murder of Nelson Almonte, as charged in Counts One through Four of this Indictment," in violation of 18 U.S.C. § 924(c) and 2.

Following a jury trial in 1999, the jury convicted Duarte on Counts One, Two, Three and Five. It acquitted Duarte on Count Four.

In 2000, this Court sentenced Duarte to imprisonment for 10 years on Count One, and to life imprisonment on each of Counts Two and Three, those counts to run concurrently with each other. In addition, on Count Five the Court sentenced Duarte to 5 years imprisonment, to run consecutively to the terms imposed under Counts One, Two, and Three.

Duarte pursued direct and collateral appeals. They all failed until May 2020, when the Second Circuit granted Duarte leave to file his present 28 U.S.C. § 2255 motion. In that motion, Duarte challenges his conviction under Count Five, the firearms statute, 18 U.S.C. § 924(c). Duarte relies principally upon the Supreme Court's decision in *United States v. Davis*, 588 U.S. 445, 139 S. Ct. 2319 (2019), which held retroactively that § 924(c) was unconstitutional in part.

Duarte was sentenced in 2000. At that time, § 924(c), violation of which resulted in a five-year consecutive term of imprisonment, prohibited in its original form the use of a firearm in connection with a "crime of violence," a concept defined by the narrowly cast "elements clause," § 924(c)(3)(A), or by the more broadly phrased "residual clause," § 924(c)(3)(B). Those clauses specified offenses which constituted predicate acts for the application of § 924(c). *See United States*

*v. Pastore*, 83 F.4th 113 (2d Cir. 2023).

This Court's sentence of Duarte in 2000 accorded with the firearms statute as it then existed, and was thus valid at that time. In 2019, the Supreme Court decided *Davis*, which held that the residual clause was unconstitutionally vague. That holding is applied retroactively. In consequence, an offense identified in the residual clause can no longer support a firearms charge under 18 U.S.C. § 924(c). "Post-*Davis*, a § 924(c) conviction may only be premised on a crime of violence as defined under § 924(c)(3)(A)'s elements clause." *Medunjanin v. United States*, 99 F.4th 129, 133 (2d Cir. 2024).

Duarte contends in his main brief [Doc. 62] that none of the offenses on which his § 924(c) conviction was predicated was a valid crime of violence under the elements clause. Alternatively, Duarte argues that even if one of the underlying offenses was a valid predicate, the record of the case does not permit a determination by the Court of the particular predicate upon which the jury relied in convicting Duarte on Count Five, the firearms charge. In these circumstances, Duarte concludes on this habeas motion, his conviction and sentence on Count Five must be vacated.

Moreover, Duarte contends that the Sentencing Guidelines, which called for mandatory life sentences on Counts Two and Three when he was sentenced, now provide that the Guidelines are only advisory, so that a plenary resentencing on all counts is warranted.

The government's brief [Doc. 64] argues that Duarte's motion to vacate his conviction on Count Five lacks merit and should be denied, and that in consequence no occasion for a resentencing is presented.

Since the original briefs on this motion were filed, and while this Court's decision was pending, additional appellate opinions were filed which have served to generate further exchanges

between the energetic counsel in this case.

## II. DISCUSSION

Duarte's motion for habeas relief challenges the validity of his conviction on Count Five of the indictment for violating the firearms statute, 18 U.S.C. § 924(c).

The case turns upon whether the record at trial shows Duarte committed a "crime of violence" of the sort defined by the "elements clause" of the statute. That provision specifies an offense which "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). That showing is necessary for an offense to be a predicate act for application of the firearms statute. If no predicate act can be identified, Duarte's motion must succeed.

Duarte's conviction on Count One for conspiracy to commit Almonte's murder does not suffice for the purpose of applying § 924(c) to this case. It is well settled by Second Circuit decisions that a conspiracy to murder is not a qualifying offense under § 924(c). *See United States v. Pastore*, 36 F.4th 423, 428 (2d Cir. 2022) (citing cases).

However, Duarte was also convicted on Counts Two and Three: Count Two, for murder of Almonte in aid of racketeering, and Count Three, for tampering with a witness (Almonte) by murder. When one considers that Duarte was not present when other individuals killed Almonte by shooting him on a New York City street, and Duarte's firearm was not used for the purpose, it becomes apparent that Duarte's liability for Almonte's murder was based on a *Pinkerton* theory, *Pinkerton v. United States*, 328 U.S. 640 (1946), or on his role in the Almonte murder as that of an aider and abetter, given Duarte's status as the head of the violent gang involved in the incidents and his

instruction that Almonte be killed.²

Either theory of liability satisfies the firearms statute, by furnishing the predicate act necessary for the statute's application to the case.

In *United States v. Gomez*, 87 F.4th 100 (2d Cir. 2023), the Second Circuit said:

> Because under a *Pinkerton* theory the defendant is convicted of the substantive offense – not of conspiring to commit the offense – he has committed a crime of violence if the substantive offense is a crime of violence. . . .
>
> . . .
> . . .
> . . .
> . . .
>
> Second-degree murder under New York law is categorically a crime of violence because the knowing or intentional causation of bodily injury *necessarily* involves the use of physical force. . . .
>
> Even if the jury found Gomez to have committed second-degree murder on a *Pinkerton* theory, the law deems him to have committed the acts of his co-conspirators. Accordingly, his racketeering conviction is for a crime of violence and *his § 924(c) conviction rests on a valid predicate*."

87 F.4th at 109-10, 111 (some emphasis added; citations and internal quotation marks omitted).

In *Medunjanin v. United States,* 99 F.4th 129 (2d Cir. 2024), the Second Circuit reasoned that:

> Unlike attempt . . . , aiding and abetting merely assigns criminal liability; it does not define the crime. Thus, in an aiding and abetting prosecution, the Government must still prove that the underlying

---

² "[U]nder *Pinkerton*, a defendant may be found 'guilty on a substantive count without specific evidence that he committed the act charged if it is clear that the offense had been committed, that it had been committed in the furtherance of an unlawful conspiracy, and that the defendant was a member of that conspiracy.'" *United States v. Bruno*, 383 F.3d 65, 89 (2d Cir. 2004), *as amended* (Oct. 6, 2016) (quoting *United States v. Miley*, 513 F.2d 1191, 1208 (2d Cir.1975)).

> crime was committed by someone other than the defendant. Where the underlying substantive offense has as an element the use, attempted use, or threatened use of force, the same force is necessarily an element in an aiding and abetting prosecution. Criminal law now uniformly treats aiders and abettors and principals alike. A defendant convicted of aiding and abetting a crime of violence is therefore guilty of the crime of violence itself; the crime of violence thus *qualifies as a proper predicate for § 924(c) liability*.

99 F.4th at 135 (emphasis added; citations, internal quotation marks, ellipses, and brackets omitted).

In the case at bar, the substantive offenses on which Duarte was convicted, and the trial evidence upon which those convictions were based, compel me to conclude that the jury's conviction of Duarte on the substantive offense of murdering Nelson Almonte was based on the *Pinkerton* theory or on the aiding and abetting theory of criminal liability.

The verdict does not specify which theory (or possibly both theories) the jury applied, but that is of no consequence. In either event, Duarte was convicted of a crime of violence which qualifies as a proper predicate for the imposition of an additional sentence under § 924(c) of the firearms statute. The trial record does not admit of any other conclusion.

I am therefore unable to accept Duarte's principal contention, that there was no valid predicate for the § 924(c) charge against him, or his alternative argument, that the verdict left it uncertain whether a valid predicate had been chosen instead of an invalid firearms theory. Duarte's conviction on Count Five, the firearms statute offense under 18 U.S.C. § 924(c), was based on a valid predicate.

Finally, with respect to Duarte's argument that the statutes underlying Counts Two and Three—18 U.S.C. § 1959(a)(1)(murder in aid of racketeering) and 18 U.S.C. § 1512(a)(1)(witness tampering by murder)—did not require mandatory life terms at the time he was sentenced, the

convictions predicated on those statutes are not being challenged in this motion, and the window to appeal any alleged sentencing error in connection with those counts has long since closed. Likewise, any claim under *Aprendi v. New Jersey*, 530 U.S. 466 (2000), that Duarte seeks to attach to his resentencing argument is untimely, having been considered and rejected by this Court in 2003.[3] *Duarte v. United States*, 289 F. Supp. 2d 487 (S.D.N.Y. 2003).

### III. CONCLUSION

For the foregoing reasons, Duarte's motion to vacate his conviction on Count Five of the indictment, and for resentencing on other counts of conviction, is in all respects DENIED.[4]

It is SO ORDERED.

Dated:   New York, New York
         May 28, 2024

                              */s/Charles S. Haight, Jr.*
                              CHARLES S. HAIGHT, JR.
                              Senior United States District Judge

---

[3] Duarte's original motion under Section 2255 contended that the Court—not the jury—had found the element of premeditation thereby violating his Sixth Amendment rights under *Aprendi v. New Jersey*, 530 U.S. 466 (2000). The Court agreed that neither the indictment nor the jury charge expressly mentioned premeditation but found no *Aprendi* error with Duarte's life sentences on Counts Two and Three. *Duarte v. United States*, 289 F. Supp. 2d 487, 491 (S.D.N.Y. 2003). As the Government suggests, premeditation is a necessarily implied by the term "contract murder," which was charged to the jury.

[4] Additionally, the Court notes that under the statute, a § 924(c) conviction mandates a term of imprisonment *consecutive* to the sentences on the predicate offenses of conviction. Here, the Count 5 sentence of five years runs consecutive to life sentences on two predicate offenses. Accordingly, even if the Court had granted vacatur on Count Five, a full resentencing would neither be necessary nor required. *See, e.g., United States v. Massa*, No. 00 Cr. 1118 (JSR), Doc. 809, at 3 (S.D.N.Y. Apr. 15, 2020) (holding that a "full resentencing" was not warranted because Massa's vacated § 924(c) conviction "had no effect on the sentence imposed for the two remaining counts of conviction") (citing *United States v. Gordils*, 117 F.3d 99, 104 (2d Cir. 1997)). *See also United States v. Peña*, 09 Cr. 341 (VM), 2020 WL 7408992, at *6 (S.D.N.Y. Dec. 17, 2020); *United States v. Torres*, 13 Cv. 7885 (DC), 2014 WL 12727208, at *1 (S.D.N.Y. Jan. 13, 2014).