UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>MILVIO DUARTE,<br><br>Movant-Defendant. | No. 99 Cr. 192 (CSH)<br><br><br><br>MAY 16, 2025 |

**RULING ON MOTION OF DEFENDANT MILVIO DUARTE FOR COMPASSIONATE RELEASE UNDER 18 US.C. § 3582(c)(1)(A)(i) [Doc. 86]**

**HAIGHT, Senior District Judge:**

## I. INTRODUCTION

Following a jury trial in this Court, Defendant Milvio Duarte, a cocaine supplier in New York City, was convicted on several federal murder and firearm offenses in connection with the contract killing of one Nelson Almonte, a Drug Enforcement Administration ("DEA") informant who was responsible for Duarte's arrest in 1993. Duarte's convictions resulted in a life sentence, which he is currently serving in a federal prison, FCI Schuylkill.

Duarte's present motion seeks "compassionate release" from that sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). Duarte asserts that his sentence should be reduced to time served because his rehabilitation, service to others, support network, and re-entry plan constitute "extraordinary and compelling circumstances" under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"). The Government resists Duarte's motion.

1

## II.  OFFENSE CONDUCT AND PROCEDURAL HISTORY

In 1994, Duarte, a cocaine supplier in New York City, ordered the execution of DEA informant Nelson Almonte, whose information led to Duarte's arrest in 1993.  *See* Pre-Sentence Report ("PSR"), ¶ 11.  While out on bail, Duarte offered Erbo, one of his drug distributors, a kilogram-and-a-half of cocaine to kill Almonte to prevent him from testifying against Duarte at trial. *Id.*  In April 1994, Duarte summoned Erbo when Duarte spotted Almonte on a street in upper Manhattan.  Erbo then paged an individual named Mungin, and the two men trailed Almonte to 133rd Street and Broadway, pulled up alongside his car, and fired eleven rounds at Almonte, thereby killing him and leaving three other passengers in the car seriously injured.

In February 1999, a grand jury returned an indictment charging Duarte with five counts in connection with Almonte's murder.  At the conclusion of his two-week trial, Duarte was convicted on four of the five counts: Count One, conspiracy to commit murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5); Count Two, murder in aid of racketeering in violation of 18 U.S.C. §§ 1959(a)(1) and (2); Count Three, murder of an informant to prevent testimony in violation of 18 U.S.C. §§ 1512(a)(1)(A), 1512(a)(1)(C), and (2); and Count Five, use and carry of a firearm in relation to murder in violation of 18 U.S.C. § 924(c).[1]  *See* Doc. 37 ("Judgment"), at 1.  On September 12, 2000, this Court sentenced Duarte to ten years on Count One and life imprisonment on Counts Two and Three, all to run concurrently.  In addition, the Court imposed a five-year sentence on Count Five, to run consecutively to the terms on Counts One to Three.  *Id.* at 2 ("Imprisonment").  Duarte's total aggregate sentence was thus "life imprisonment."

---

[1] Duarte was acquitted on Count Four, murder of an informant in retaliation for providing to law enforcement any information relating to the commission of a federal offense, in violation of 18 U.S.C. § 1513(a)(1)(B).

Duarte's direct and collateral appeals from his conviction were denied. Specifically, Duarte filed a notice of appeal to the Second Circuit on September 20, 2000; and that appeal was denied by summary order in July 2001. *See United States v. Duarte*, 14. F. App'x 46 (2d Cir. 2001). Duarte then filed a petition for a writ of certiorari with the United States Supreme Court, which was denied on February 19, 2002. *See Duarte v. United States*, 534 U. S. 1139 (2002).

Thereafter, Duarte filed a motion to vacate his sentence under 28 U.S.C. § 2255, claiming that (1) his life sentences were imposed in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000); (2) he was denied effective assistance of counsel; and (3) the jury instruction was defective in that it allowed the jury to convict him on the firearms charge in Count Five without ensuring that the jury was unanimous in finding Duarte guilty on one or more of the predicate crimes charged in Counts One, Two, or Three. This Court denied that motion, *Duarte v. United States*, 289 F. Supp. 2d 487, 492-93 (S.D.N.Y. 2003), and Duarte appealed to the Second Circuit. The Court of Appeals affirmed this Court's denial, 137 F. App'x 423 (2d Cir. 2005), and in 2010, also denied Duarte leave to file a second or successive habeas corpus motion.

In May 2020, the Second Circuit granted Duarte leave to file a motion for habeas corpus relief under 28 U.S.C. § 2255 to challenge his conviction under the federal firearms statute, 18 U.S.C. § 924(c), which prohibited the use of a firearm in connection with a "crime of violence." On September 14, 2020, Duarte filed his Section 2255 motion, challenging his § 924(c) conviction in Count Five under the Supreme Court's decision in *United States v. Davis*, 588 U.S. 445 (2019). Doc. 61. *Davis* condemned as unconstitutional the firearms statute's broad definition of a "crime of violence" contained in the *residual clause* of § 924(c)(3)(B), while letting stand the more narrow concept derived from the *elements clause* in § 924(c)(3)(A). *Davis* holds that these concepts apply

3

retroactively.

In the case at bar, Duarte moved in his habeas petition to dismiss his firearms conviction on the ground that "none of the offenses on which his § 924(c) conviction was predicated was a valid crime of violence under the elements clause." *United States v. Duarte*, No. 1:99 CR. 192 (CSH), 2024 WL 2786780, at *2 (S.D.N.Y. May 28, 2024). I noted in that opinion that "[t]he case turns upon whether the record at trial shows Duarte committed a 'crime of violence' of the sort defined by the 'elements clause' of the statute," a "showing [that] is necessary for an offense to be a predicate act for application of the firearms statute." *Id.* at *3. "If no predicate act can be identified, Duarte's motion must succeed." *Id*.

In the cited opinion, I denied Duarte's habeas motion to dismiss his firearms conviction. I concluded that this motion failed because a review of the trial evidence showed—

> Duarte's liability for Almonte's murder was based on a *Pinkerton* theory, *Pinkerton v. United States*, 328 U.S. 640 (1946), or on his role in the Almonte murder as that of an aider and abetter, given Duarte's status as the head of the violent gang involved in the incidents and his instruction that Almonte be killed.
>
> Either theory of liability satisfies the firearms statute, by furnishing the predicate act necessary for the statute's application to the case.

2024 WL 2786780, at *3.

Following this Court's rejection of his habeas claim, Duarte filed the present motion, asserting a statutory claim for compassionate release from the sentence he is serving.[2]

---

[2] Prior to filing the instant motion, Duarte, through counsel, made an administrative request, emailing the Warden of USP Pollock, seeking to obtain a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i) and 28 C.F.R. § 571.60, *et seq.* Specifically, Duarte requested to reduce his sentence to time served, to result in immediate release from custody. He argued that there were "extraordinary and compelling circumstances" that warranted his release: (1) his own rehabilitation, (2) his service to others, (3) sustained family support, and (4) a promising re-entry plan. Doc. 86,

### III. DISCUSSION

**A. Applicable Law**

In his present motion, Duarte repeats the arguments in his prior written request to the Warden of USP Pollock, stating once again that there are "extraordinary and compelling circumstances to reduce [his life] sentence under 18 U.S.C. § 3582(c)(1)(A)(i) to time served."[3] Doc. 86, at 8. Describing these circumstances, Duarte cites: (1) his rehabilitation and growth, including his completion of "rehabilitative, vocational, and educational programming" and "regret and remorse over his past actions," Doc. 86, at 21-22; (2) his commitment to serving others, acting as a "tutor and program instructor" in prison and "as a role model to his family members" with "hard work" and "resilience," *id*. at 22-23; (3) his sustained presence in the lives of friends and family, all of whom have suffered the pain of his absence, *id.* at 23-24; and (4) his promising re-entry plan, which he believes would "ensure his success upon release," *id.* at 24-25.

Duarte's motion thus relies on 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act of 2018, 132 Stat. 5194, 5239 (December 21, 2018).[4] Section 3582(c)(1)(A) is "commonly

---

Ex. L. The Warden responded on August 1, 2024, denying Duarte's request because he had not "identified nor provided any extraordinary or compelling circumstances."

[3] *See* n.2, *supra*.

[4] One observes without surprise that this congressional expansion of the district court's authority to reduce sentences resulted in a bonanza of district court filings. It is only natural for prisoners serving lengthy sentences to perceive and profess "extraordinary and compelling reasons" why their particular sentence should be reduced. The U.S. Sentencing Commission's Compassionate Release Data Report dated December 2022 recites at page 3 that "[w]ith the advent of the COVID-19 pandemic, the courts received thousands of compassionate release motions, mostly by offenders." The number of such motions by hopeful prisoners continues to swell to this day. Duarte's present motion is one of them. He is represented in that effort by the Federal Defenders of New York.

5

referred to as the compassionate release statute." *United States v. Keitt*, 21 F.4th 67, 69 (2d Cir. 2021).[5]  The amended statute allows an incarcerated defendant to file a motion seeking compassionate release directly in a federal district court after first satisfying an administrative exhaustion requirement.  Before the First Step Act, the relevant statute permitted only the Director of the Bureau of Prisons to receive and rule upon a prisoner's motion to reduce a sentence.  The First Step Act's amendments to the statute authorize the district courts, after administrative exhaustion, to adjudicate a *"motion of the defendant* . . . [to] reduce the term of imprisonment . . . after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent they are applicable, if it finds that — (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C.A. § 3582(c)(1)(A)(i) (emphasis added).

As the Second Circuit has explained, under Section 3582(c)(1)(A) (i), "there are three requirements that must be satisfied before a court can grant such relief." *Keitt*, 21 F.4th at 71.  First, "an inmate must exhaust administrative remedies by requesting such relief from prison authorities." *Id.* "Specifically, an inmate may ask the sentencing court to consider reducing a sentence only 'after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)).  "Second, a court must "consider[ ] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A))). "Third, the inmate

---

[5] The phrase "compassionate release" does not appear in the statute itself.  It is a gloss originally fashioned by the courts and subsequently adopted by the statutory amendments.  I will use the phrase in this opinion.

must demonstrate that his proffered circumstances are indeed "extraordinary and compelling" such that, in light of these § 3553(a) factors, a sentence reduction is justified under § 3582(c)(1)(A) and would not simply constitute second-guessing of the sentence previously imposed." *Id.* Finally, "[t]he statute sets out a fourth requirement: that the 'reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" *Id.* n. 2 (quoting 18 U.S.C. § 3582(c)(1)(A)).[6]

With respect to the burden of proof, as the movant, the defendant bears the burden of establishing that he is entitled to the requested relief under Section 3582(c)(1)(A). *See, e.g., United States v. Fernandez*, 104 F.4th 420, 427 (2d Cir. 2024) ("The burden of showing that the circumstances warrant a sentence reduction is on the defendant.")(citation omitted); *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease.") (citations omitted); *United States v. Gotti*, 433 F. Supp. 3d 613, 619 (S.D.N.Y. 2020) (noting that "even if Gotti had met his burden of showing eligibility for compassionate release (and the Court has specifically found that he has not), freeing him would still not be warranted").

## B. Analysis

### 1. 18 U.S.C. § 3582(c)(1)(A)(i) and U.S.S.G. §1B1.13

With respect to exhaustion of administrative remedies, the "Government does not dispute that Duarte has exhausted his administrative remedies." Doc. 90, at 5 n.3; *see also* n.2, *supra*. Next,

---

[6] The Second Circuit has "held that, at present, the policy statement governing compassionate release—U.S.S.G. § 1B1.13—governs only motions brought by the Director of the Bureau of Prisons, not those brought directly by inmates." *United States v. Keitt*, 21 F.4th 67, 71 n.2 (2d Cir. 2021) (citing *United States v. Brooker*, 976 F.3d 228, 236–37 (2d Cir. 2020)). Because Duarte has directly filed his own motion, this requirement is inapplicable.

in resolving the motion under 18 U.S.C. § 3582(c)(1)(A)(i), the Court examines whether the defendant has met his burden of proving that "extraordinary and compelling circumstances" warrant a reduction in his sentence. *Keitt*, 21 F.4th at 71; *Daugerdas*, 613 F. Supp. 3d at 809–10. In analyzing whether "extraordinary and compelling circumstances" exist before considering the Section 3553(a) factors, the Court mirrors the order of the parties' arguments but remains mindful that pursuant to *Keitt,* it may deny relief solely in light of the Section 3553(a) factors if that "condition[ ] is lacking." 21 F.4th at 73 (affirming district court's denial of relief solely in light of the § 3553(a) factors because "a court may reduce a sentence under § 3582(c)(1)(A) only if three conditions are in place: administrative exhaustion (absent waiver or forfeiture by the government); satisfaction of the § 3553(a) factors; and extraordinary and compelling reasons. It follows that if a district court determines that one of those conditions is lacking, it need not address the remaining ones.").

In *United States v. Fernandez*, 104 F.4th 420, 427-28 (2d Cir. 2024), the Second Circuit construed the statutory language "extraordinary and compelling reasons." "Because Congress did not define those terms," the Court noted, "we consider the ordinary, common-sense meaning of the words . . . at the time Congress enacted the statute." 104 F.4th at 427-28 (citations and internal quotation marks omitted). Thus considered, the court of appeals construed an "extraordinary" reason to be "most unusual," "far from common," having "little or no precedent," "beyond or out of the common order," "remarkable," and synonymous with "singular." *Id.* at 428 (citations and internal quotation marks omitted). A "compelling" reason, the *Fernandez* court held, "is both powerful and convincing," "forcing," "impelling," and "driving." *Id.* (citations and internal quotation marks omitted).

8

Given those characteristics, a motion for compassionate release by or on behalf of an incarcerated individual is not a favored motion in the law: quite to the contrary. Most motions for compassionate release are denied by federal district courts. Specifically, data compiled by the United States Sentencing Commission for the fiscal years 2022-2024 and the first quarter of 2025 show that during that time period, 12,226 motions for compassionate release were made in federal courts nation-wide. Of those motions, 10,546 were denied and only 1,680 motions were granted. *See* U.S. Sentencing Commission Compassionate Release Data Report ("SC Data Report") dated February 2025 [title page and pages 1-2].

The most frequently cited reasons for denying the motion for compassionate release were "no 18 U.S.C. § 3553(a) factors;" "[n]o extraordinary and compelling reason provided;" "[r]ehabilitation insufficient;" and "[f]ailure to exhaust administrative remedies." SC Data Report, Table 11. The most common reasons for granting the motion were "[u]nusually long sentence (10 or more years) and change in law," "[r]ehabilitation;" and "[t]erminal illness." *Id.*, Table 10.

"[W]hether to reduce a sentence is a matter that rests in the discretion of the court." *United States v. Gotti*, 433 F. Supp. 3d 613, 619 (S.D.N.Y. 2020).[7] The Second Circuit "review[s] the denial of a motion for a discretionary sentence reduction for abuse of discretion." *United States v. Jones*, 17 F.4th 371, 374 (2d Cir. 2021) (per curiam) (citing *United States v. Holloway*, 956 F.3d 660, 664

---

[7] As noted by then-Chief Judge McMahon of this District, with respect to discretion:

> A court is not required to reduce a sentence on compassionate release grounds, even if a prisoner qualifies for such reduction because of his medical condition (and it bears repeating, Gotti does not so qualify). The First Step Act was drafted using the word "may," not "must." In the end, whether to reduce a sentence is a matter that rests in the discretion of the court.

*United States v. Gotti*, 433 F. Supp. 3d 613, 619 (S.D.N.Y. 2020).

(2d Cir. 2020)).

Duarte lists the extraordinary and compelling reasons for his release as: (1) his rehabilitation, (2) service to others, (3) strong family support, and (4) promising re-entry plan. Doc. 86, at 8. However, as discussed *infra*, these asserted bases do not fall within the "extraordinary and compelling reasons" referenced in 18 U.S.C. § 3582(c)(1)(A)(i) and U.S.S.G. § 1B1.13.

For example, as to "medical circumstances of the defendant," enumerated in § 1B1.13 (b)(1), rather than suffering from "a terminal illness" or "serious physical or medical condition," Duarte concedes in his motion that he is in "relatively good health," with his only specified ailments as being "pre-diabetic" and wearing dentures. Doc. 86, at 28. In fact, when the Warden of USP Pollock denied Duarte's request, he noted that Duarte is "classified as a Health Care Level 1 individual and Mental Health Care Level 1 individual." Duarte thus has neither a medical condition of the sort referenced in §1.B1.13, nor one found to be "extraordinary and compelling" by the courts.[8]

---

[8] Duarte also fails to take into account that the decisions to grant compassionate release in the cases he cited involved defendants with serious conditions during the pandemic of COVID-19. Furthermore, these decisions were entered after the Second Circuit licensed courts to consider any reasons that might be extraordinary and compelling, *United States v. Brooker*, 976 F.3d 228, 232 (2d Cir. 2020), and before the Guidelines were amended in November 2023 to "control[ ] the analysis of a compassionate release petition," *United States v. Corbett*, No. 10 CR. 184 (PAE), 2023 WL 8073638, at *3 (S.D.N.Y. Nov. 21, 2023). *See, e.g., United v. Torres,* 464 F. Supp. 3d 651, 665 (S.D.N.Y. 2020) (citing the "high risk presented by the COVID-19 pandemic" in granting compassionate release to Jorge and Victor Torres who suffered from a stroke, high blood pressure and diabetes (Jorge), and gallbladder stones (Victor)); *United States v. Mongelli*, No. 02-CR-307 (NGG), 2020 WL 6449237, at *1 (E.D.N.Y. Nov. 3, 2020) (granting compassionate release to defendant diagnosed with cancer, who "underwent 28 sessions of radiation over seven-week hospital stay" and thereafter contracted COVID-19); *United States v. Rios*, No. 3:94 cr 112 (JBA), 2020 WL 7246440, at *1 (D. Conn. Dec. 8, 2020) (Government did not dispute medical eligibility of a defendant who suffered from "severe obesity, severe and uncontrolled hypertension, asthma and related lung ailments, and arthritis," that "render[ed] him especially vulnerable to COVID-19.").

Because he fails to satisfy any of the extraordinary and compelling reasons set forth in U.S.S.G. § 1B1.13(b)(1)-(4), Duarte's motion relies on the "catch-all" provision of §1B1.13(b)(5), which allows for compassionate release if "[t]he defendant presents any other circumstances or combination of circumstances that, when considered together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described." Duarte argues that his rehabilitation, mentoring of others, strong family ties, and re-entry plan satisfy this catch-all provision. However, as discussed *infra,* these circumstances, although creditable, are not "extraordinary;" nor are they similar in gravity to the reasons provided in §1B1.13(b)(1)-(4).

First, as to his rehabilitation, all inmates are expected to maintain clean disciplinary records and engage in self-improvement opportunities like prison programming. It thus follows that courts of this District have repeatedly held that an inmate's compliance with prison regulations does not constitute an extraordinary or compelling reason for release. *See, e.g.*, *United States v. Saleh*, No. 93 Cr. 181 (WHP), 2020 WL 3839626, at *4 (S.D.N.Y. July 8, 2020)(denying relief, noting "every inmate should strive for a productive institutional record while incarcerated because that is what is expected"); *United States v. Weeks,* No. 16 Cr. 167 (LAP), 2020 WL 1862634, at *3 (S.D.N.Y. Apr. 14, 2020) (finding defendant's rehabilitation efforts "admirable," but "not grounds for release"); *United States v. Lisi*, 440 F. Supp. 3d 246, 251 (S.D.N.Y. 2020)("Application Note 3 to § 1B1.13 expressly states that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement."); *United States v. Johnson*, No. 92-CR-159-A, 2024 WL 1363673, at *6 (W.D.N.Y. Apr. 1, 2024)("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.")(citations omitted)[9]. This Court concurs,

---

[9] *Appeal withdrawn*, No. 24-1017, 2024 WL 5656458 (2d Cir. Nov. 12, 2024).

finding Duarte's rehabilitation efforts as an inmate commendable, but not, standing alone, a basis for his early release.

Second, Duarte argues that his service to others, in the form of inmate mentoring, constitutes an extraordinary and compelling reason for his early release. According to his motion, he has "taken up the role of a tutor, teacher, and counselor to share the lessons he has learned throughout his own growth with other incarcerated individuals, his family, and friends." Doc. 86, at 7. In addition, with respect to tutoring, he "assists with translation when needed and seems to find real purpose in helping other inmates with their education." *Id.* (citing Ex. G (BOP Progress Report), at 2). It appears that Duarte is a productive and valuable member of the prison community, which is certainly admirable. Tutoring and mentoring comprise worthy rehabilitation efforts. However, that service alone does not warrant release. *See, e.g.*, *United States v. Saleh*, No. 93-cr-181, 2020 WL 3839626, at *4 (S.D.N.Y. July 8, 2020) ("commend[ing] [defendant]'s institutional record and efforts at rehabilitation," but denying compassionate release and noting that "a productive institutional record while incarcerated . . . is what is expected"), *aff'd sub nom. United States v. Elgabrowny*, No. 20-2254, 2022 WL 1701515 (2d Cir. May 27, 2022); *see also United States v. Riley*, No. 96-CR-149 (KAM), 2025 WL 1077107, at *6 (E.D.N.Y. Apr. 10, 2025) (denying "compassionate release" of defendant serving life sentence on numerous offenses (*e.g.*, racketeering, conspiracy, murder, cocaine distribution), despite prison official's statements that he was a "model inmate who always mentor[ed] hundreds of other inmates," the "first to volunteer and help staff calm other inmates down," and "an asset to the Prison Population").

Third, as to family ties, there is a multitude of inmates with siblings and other family ties, many of whom would kindly provide a support system for their kin upon release. After reviewing

the many warm letters submitted by Duarte's family members and friends, it is clear that his absence is a source of sorrow and that early release would result in joyful reunions. Doc. 86, Ex. C.- E. It is also plain that Duarte has family members who would willingly provide support upon his re-entry, should that be granted.[10] However, only in rare situations do family circumstances combine with several other factors to fulfill the catch-all provision of §1B1.13(b)(5) to warrant relief. *See, e.g., United States v. Snype,* 683 F. Supp. 3d 351, 367 (S.D.N.Y. 2023) (granting compassionate release where defendant was convicted of conspiracy to commit bank robbery, which ordinarily carried a five-year term of imprisonment, but received a life sentence under the three-strikes law (18 U.S.C. § 3559(c)(1)), his three strikes were committed at youthful ages (18, 19, and 22), there were difficult conditions of confinement, defendant displayed impressive rehabilitation, and defendant had the sole ability to provide necessary care to the mother of his children, who suffered from schizophrenia); *United States v. Herbert*, No. 03 Cr. 211 (SHS), 2024 WL 1931962, at *2-3 (S.D.N.Y. May 2, 2024) (granting compassionate release to first-time, non-violent offender who served over 75% of his sentence based on his "lengthy rehabilitation, minor disciplinary record, conditions of confinement during the COVID-19 pandemic, family circumstances [inability to have family, residing in Belize, visit him], limited release options as a non-citizen, low risk of recidivism, age, non-violent status, and lack of danger to the public upon release").

In the case at bar, Duarte was fully an adult, thirty-three years old, when he ordered the

---

[10] What is unclear is whether Duarte would contest deportation in the event of release. He maintains that his deportation is "all but guaranteed" by an ICE hold so that he "accepts deportation as the inevitable consequence of his convictions and will not contest it." Doc. 86, at 17. On the other hand, Duarte's BOP progress report, dated July 3, 2024, indicates that he has "made plans to reside with his mother in Miami, Florida, upon his potential release." Doc. 86-8 (Ex. G), at 5. It appears that his re-entry plan may not contemplate deportation.

murder of Government informant Almonte. Furthermore, he is not the only person able to care for any particular dependent family member.

Upon careful consideration, I find myself unable to conclude that Duarte should be released on the prayed-for basis of compassionate release. The reasons he has advanced, individually or collectively, fail to comprise extraordinary and compelling circumstances, as provided in 8 U.S.C. § 3582(c)(1)(A)(i) and U.S.S.G. § 1.B1.13(b).

### 2. Section 3553(a) Factors

Nonetheless, assuming for the sake of argument that Duarte has successfully established "extraordinary and compelling" reasons to warrant compassionate release, the Court, before granting release, must assure itself that release is consistent with "the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1).[11] *See also United States v. Fernandez,* 104 F.4th 420, 426-27 (2d Cir. 2024)("[Section] 3582(c)(1) permits a district court to reduce a term of imprisonment if 'after considering the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable, it finds that extraordinary and compelling reasons warrant such a reduction.'")

---

[11] In *United States v. Keitt*, 21 F.4th 67 (2d Cir. 2021), the Second Circuit clarified that a district court may deny "compassionate release" by relying exclusively on the factors in 18 U.S.C. § 3553:

> [T]he court did not determine whether his proffered circumstances rose to the level of extraordinary and compelling reasons. Instead, it denied relief *solely in light of the § 3553(a) factors*. That was not an error. As we explained above, a court may reduce a sentence under § 3582(c)(1)(A) only if three conditions are in place: administrative exhaustion (absent waiver or forfeiture by the government); satisfaction of the § 3553(a) factors; and extraordinary and compelling reasons. It follows that if a district court determines that one of those conditions is lacking, it need not address the remaining ones.

21 F.4th at 73 (emphasis added)

(quoting *United States v. Halvon*, 26 F.4th 566, 568 (2d Cir. 2022) (*per curiam*) and 18 U.S.C. § 3582(c)(1)(A)(i)). Those Section 3553(a) factors include: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) "the need for the sentence imposed;" (3) "the kinds of sentences available;" (4) the Guidelines ranges of the sentence; (5) "any pertinent policy statement;" (6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;" and (7) "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(1)-(7).

To apply the § 3553(a) factors involves assessing whether the relevant factors "outweigh the 'extraordinary and compelling reasons' warranting compassionate release . . . [and] whether compassionate release would undermine the goals of the original sentence." *United States v. Ebbers*, 432 F. Supp. 3d 421, 430-31 (S.D.N.Y. 2020).[12] *See also United States v. Lisi*, 440 F.Supp.3d 246, 252-54 (S.D.N.Y. 2020) (finding compelling reasons warranting defendant's release but nevertheless denying motion for compassionate release because § 3553(a) factors "weigh[ed] heavily against the reduction of [defendant's] sentence to time served").

In the case at bar, Duarte's motion should be denied because the §3553(a) factors weigh heavily against his release. First, examining the "nature and circumstances of the offense," 18 U.S.C. §3553(a)(1), the heinousness and gravity of Duarte's criminal conduct— ordering one of his

---

[12] *Abrogation recognized on other grounds by United States v. Johnson*, No. 23-6272, 2023 WL 6475329, at *2 (2d Cir. Oct. 5, 2023)("[N]othing in *Ebbers* requires a court to weigh the § 3553(a) factors against extraordinary circumstances when no extraordinary circumstances are apparent, and a contrary reading of the relevant language would directly contradict our controlling decision in *Keitt*. As we made clear there, if a district court determines that the § 3553(a) factors counsel against release, it may deny a compassionate-release motion on that basis alone and "need not determine whether ... extraordinary and compelling reasons that might (in other circumstances) justify a sentence reduction" exist.") (quoting *United States v. Keitt*, 21 F.4th 67, 73 (2d Cir. 2021)).

drug distributors to execute DEA informant Nelson Almonte to prevent his testimony against Duarte—cannot be overstated. As the Probation Department described in the Pre-Sentencing Report ("PSR"), Duarte was "a callous individual" who avoided accepting "responsibility and punishment for his own illicit acts" by "rationaliz[ing] the taking of a human life" in the "apparent belie[f] that his participation would go undetected." PSR, at 14. By ordering the public shooting of Almonte on a busy New York street, he "had no regard for the innocent people in the community or inside the vehicle at the time of the shooting who may have also suffered fatal injuries." *Id.* Because he has failed to "express any remorse or concern for his past heinous acts," "[a] life term of imprisonment is a well deserved penalty." *Id.* The selfishness and violent nature of Duarte's crime merit life-long imprisonment.[13]

In addition, studying his "history and characteristics," 18 U.S.C. § 3553(a)(1), Duarte was not a youth at the time of this crime. At thirty-three years old, he did not act as a result of "hot cognition" or "peer pressure." *United States v. Van Putten*, 726 F. Supp. 3d 245, 258 (S.D.N.Y.

---

[13] As this Court reflected in a prior Ruling:

> According to the government's proof at trial, Duarte was at the time the leader of a New York City gang engaged in narcotics trafficking. Almonte was acting as an informant for the federal Drug Enforcement Administration. A time came when Duarte was arrested on drug charges as the result of information furnished to law enforcement by Almonte.
>
> After Duarte was released on bail on the drug charges against him, he arranged for the murder of Almonte by other members of the drug-selling gang. Specifically, Duarte offered one of his drug distributors, one Erbo, an amount of cocaine to kill Almonte and thereby prevent Almonte from testifying against Duarte at trial.

2024 WL 2786780, at *1. That scheme was entered into and carried out. Erbo killed Almonte. Duarte was convicted for his part in arranging Almonte's murder. The Second Circuit, in rejecting Duarte's direct appeal, noted "the strength of the government's evidence of Duarte's instigation of the murder of Almonte." 14 F. App'x at 51.

2024).[14]  He was also not uneducated or impoverished.  Having attended two higher education programs—college in the Dominican Republic and a technical institute in New York City—he specialized in mechanical engineering and refrigerator repair.  PSR ¶¶46-48.

Duarte may argue that financial pressure in the United States drove him to the "terrible decision to emulate those around him and [sell] drugs to make money," Doc. 86, at 9; but he was not a street-corner dealer.  Rather, he emerged as the "leader of a New York City gang engaged in narcotics trafficking."  *United States v. Duarte*, No. 99 Cr. 192 (CSH), 2024 WL 2786780, at *1 (S.D.N.Y. May 28, 2024).  Specifically, he was a major cocaine supplier who trafficked in kilogram quantities of that drug.  In short, Duarte was an adult, a forceful criminal gang leader, who ordered the death of Almonte and saw that those orders were obeyed.  He was not a youthful, immature figure who happened to commit a capital crime: the relatively sympathetic picture drawn by his motion papers.

In addition, Section 3553(a) specifically requires that a sentence "reflect the seriousness of the offense," "promote respect for the law," and "provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A).  As Judge Rakoff noted in *United States v. Rodriguez*, 492 F. Supp. 3d 306, 315 (S.D.N.Y. 2020):

> These factors counsel against a sentence reduction—and effectively foreclose a reduction to time served. There can be no question that [the defendant]'s offenses,

---

[14] Milvio Duarte's motion papers contain misleading descriptions of his personal situation during his participation in the murder of Nelson Almonte, the underlying offense for which Duarte was incarcerated.  Duarte says in his letter filed on July 25, 2024, that he engaged in that criminal conduct because "I began seeing the street-life and people engaged in criminal activity, being *not fully mature*."  Doc. 86-1, at 1  (emphasis added).  Judy Batista, a family member, says in a letter to the Court dated March 17, 2025, that "Milvio was a *young man* when he committed the offenses that led to his conviction." Doc. 94, at 1 (emphasis added).  This portrayal of Duarte as youthful and immature at the time of Almonte's murder is materially false.

> especially his participation in the murder of a confidential police informant, were heinous. It was, as the Government points out, "squarely at odds with any modicum of respect for the law and human life." Gov. Mem. at 5.
> . . . [The defendant's crime] was not the "average" murder. It was an act of torture and violence designed to send a dangerous message that cooperation with law enforcement would be brutally punished. For such a crime, the Court finds that a 20-year sentence—that is, a reduction to time served—would not constitute just punishment, reflect the seriousness of the offense, or promote respect for the rule of law.

*Id*. at 315. Here, like the defendant Rodriguez, Duarte's offense involved the murder of a Government informant to prevent that individual from testifying regarding a drug trafficking enterprise. Such a brutal act of violence sent threatening notice to anyone willing to cooperate with the Government. Given the nature of his offense, reduction of Duarte's sentence would conflict with the Section 3553(a) factors by failing to maintain a just punishment, reflect the seriousness of his offense, and promote respect for the rule of law.

In addition, there is no need "to avoid [an] unwarranted sentence disparit[y] among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). [15] In instances where defendants convicted of murder were granted compassionate release, courts have emphasized that those defendants had lesser culpability than co-defendants who, like Duarte, ordered the murder.[16] *See, e.g.*, *Van Putten*, 726 F. Supp. 3d at 256-59 (granting compassionate release, noting a "glaring disparity" between Van Putten and his accomplices where

---

[15] On the four Counts on which he was sentenced, Duarte's sentences were based on the effective Sentencing Guideline Ranges, as detailed by the Court in its Judgment. *See* Doc. 87 ("Judgment"), at 6 ("Statement of Reasons").

[16] In his motion papers, Duarte argues that "[c]ontrary to the Government's attempts to distinguish [his] case, Mr. Duarte and the conduct he was convicted of are not so different from those defendants whose compassionate release motions were granted by courts." Doc. 93, at 13. Such an argument fails to take into account that the Court's assessment turns on the particular facts of each defendant's offenses and circumstances.

two "leaders of murderous narcotics organizations" pressured 21-year-old Van Putten into committing retaliatory murder and Van Putten received the harshest sentence despite neither originating the murder-for-hire plot nor firing the fatal bullet); *United States v. White*, No. 96-CR-1123 (SHS), 2022 WL 18276933, at *4 (S.D.N.Y. Dec. 8, 2022) (granting compassionate release where "White did not act alone" in the murder of a postal employee, "did not pull the trigger that killed [the victim], and whose "role" in the murder was to stall traffic by driving slowly).[17]

As the Government reflects, here Duarte "directed, planned, and paid for the execution of Nelson Almonte to save his own skin." Doc. 90, at 9. Duarte summoned Erbo, who paged a hitman, resulting in eleven bullets being sprayed into Almonte's car, killing Almonte and seriously injuring three passengers. There is no sentencing disparity among those responsible for Almonte's murder. Duarte's imposed life sentence reflects the level of his culpability.

## IV. CONCLUSION

Although Milvio Duarte's good conduct during his incarceration does him credit, it is a standard of conduct expected of all prisoners. Having carefully considered the matter, I conclude that Duarte has failed to demonstrate extraordinary and compelling reasons for his release and, in any event, the sentencing factors in 18 U.S.C. § 3553(a) weigh against reducing his sentence.

For the foregoing reasons, Duarte's "Motion for Compassionate Release Pursuant to 18

---

[17] In *White*, the court also noted that when "White was released on bail[, he] complied with all of the conditions of his release during the months preceding trial." 2022 WL 18276933, at *5. In contrast, Duarte used his time while out on bail to orchestrate the execution of a Government informant to prevent his trial testimony.

U.S.C. §3582(c)(1)(A)(i)" [Doc. 86] is DENIED.

It is SO ORDERED.

Dated:  New York, New York
        May 16, 2025

                                                    */s/Charles S. Haight, Jr.*
                                                    CHARLES S. HAIGHT, JR.
                                                    Senior United States District Judge